IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**SIGRID G.**,[1]

      Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.

Case No. 3:17-cv-01756

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff brings this action for judicial review of the Commissioner of Social Security's decision denying her application for Supplemental Security Income and Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On July 24, 2012, Plaintiff filed an application for Supplemental Security Income and Disability Insurance Benefits. After a hearing, an Administrative Law Judge determined that she was not disabled under the Social Security Act. Plaintiff filed the instant appeal challenging that determination on November 2, 2017. The appeal was assigned to Magistrate Judge Thomas M. Coffin. On November 20, 2018, Judge Coffin issued a Findings and Recommendation ("F&R").

In his F&R, Judge Coffin recommended that I reverse and remand the case for further proceedings. Plaintiff timely filed objections and the matter is now before me. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). I review *de novo* all portions of an F&R subject to objection. 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Bus. Machs. Inc.*, 656 F.2d 1309,

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of both the non-governmental party in the case and any immediate family members of that party.

1313 (9th Cir. 1981). Upon review, I adopt Judge Coffin's F&R in part and, because Plaintiff satisfies the requirements of Listing 12.05(C), REVERSE the ALJ's decision and REMAND the case for immediate payment of benefits.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner of Social Security ("Commissioner") if her decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the decision of the Administrative Law Judge ("ALJ"). *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies her burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's Residual Functional Capacity ("RFC"), age, education, and work experience. *Id.*
Page 2 – OPINION AND ORDER

In the present case, the ALJ found that Plaintiff was not disabled. She first determined that Plaintiff remained insured for Disability Insurance Benefits until June 30, 2010. Tr. 20. Next, at step one of the sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date through her date last insured. Tr. 20. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative bilateral knee joint disease, obesity, intellectual disability, and adjustment disorder with anxiety. Tr. 20. At step three, the ALJ determined that Plaintiff did not meet or equal the requirements of any listed impairment in 20 C.F.R. pt. 404, subpt. P, app'x 1 ("Listing"). Tr. 23. The ALJ specifically found that Plaintiff did not meet Listing 1.02, 1.04, 12.05, or 12.06. Tr. 23.

Before moving to step four, the ALJ found that Plaintiff had the RFC to perform sedentary work with certain non-exertional limitations. Tr. 29. Specifically, the ALJ found that, in addition to a number of exertional restrictions, Plaintiff was limited to simple, routine, and repetitive work tasks and to making simple work-related decisions. Tr. 29. At step four, relying on the testimony of a Vocational Expert, the ALJ found that Plaintiff was unable to perform past relevant work as a truck driver or bus driver. Tr. 34. At step 5, after considering her age, education, work experience, and RFC, the ALJ determined that Plaintiff was capable of performing jobs existing in significant numbers in the national economy, including wafer breaker, taper, and table worker. Tr. 35. Having made this determination, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act and did not qualify for benefits. Tr. 35.

Plaintiff now challenges the ALJ's non-disability determination on multiple grounds. As relevant here, however, Plaintiff argues that the ALJ erred in finding that she did not meet the requirements of Listing 12.05(C) for intellectual disability. Because I find that the ALJ erred in

failing to find Plaintiff disabled under Listing 12.05(C), I do not address Plaintiff's remaining allegations of error and remand the case for immediate payment of benefits.

   I.   Listing 12.05(C).

Plaintiff argues that the ALJ erred because she meets the requirements of Listing 12.05(C).[2] Listing 12.05 pertains to intellectual disabilities. *See* 20 C.F.R. pt. 404, subpt. P, app'x 1 § 12.05. To satisfy the Listing, a claimant must demonstrate "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation." *Kennedy v. Colvin,* 738 F.3d 1172, 1176 (9th Cir. 2013). Although the Ninth Circuit has yet to address the issue, I interpret Listing 12.05 to require a showing of both *current* deficits in adaptive functioning *and* onset of the same before age 22. *Accord Davidson v. Berryhill*, No. 3:17-CV-00688-SB, 2018 WL 1710441, at *5 (D. Or. Apr. 9, 2018); *Josh v. Berryhill*, No. 6:16–cv–1798–SI, 2017 WL 4330780, at *5 (D. Or. Sept. 29, 2017); *McGrew v. Colvin*, No. 3:13–cv–01909–SI, 2015 WL 1393291, at *6 (D. Or. Mar. 25, 2015).

As an initial matter, the parties here agree that Plaintiff satisfies the second prong. Plaintiff submitted a valid Full Scale IQ ("FSIQ") score of 65, tr. 474, which the ALJ accepted, tr. 26. It is therefore not in dispute that Plaintiff satisfies the IQ criteria for Listing 12.05(C). In addition, although the ALJ failed to address whether Plaintiff satisfied the third prong, Plaintiff plainly suffered from a qualifying impairment. "A finding of severe impairment at step two is a *per se* finding of impairment imposing additional and significant work-related limitation of function as employed in the [third] prong of Listing 12.05C." *Campbell v. Astrue*, No. 1:09–cv–00465 GSA,

---

[2] The parties agree that although Listing 12.05 was updated effective January 17, 2017, I should apply the rule that was in effect at the time the administrative decision became final. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 n.1 (Sep. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

Page 4 – OPINION AND ORDER

2011 WL 444783, at *18 (E.D. Cal. Feb. 8, 2011) (citations and quotations omitted) (collecting cases); *Fanning v. Bowen*, 827 F.2d 631, 633-34, 633 n.3 (9th Cir. 1987). At step two, the ALJ found that Plaintiff had several severe impairments, including degenerative bilateral knee joint disease, obesity, and adjustment disorder with anxiety. Tr. 20. Thus, to the extent the ALJ impliedly found that Plaintiff did not satisfy the third prong, her finding was in error.

The central issue then is whether the ALJ erred in concluding that Plaintiff had no deficits in adaptive functioning or an onset of the same prior to age 22. A claimant has deficits in adaptive functioning if she "fail[s] to meet developmental and sociocultural standards for personal independence and social responsibility." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 33 (5th ed. 2013). These deficits must "limit functioning in at least one activity of daily life, such as communication, social participation, and independent living, across multiple environments, such as home, school, work, and community." *Id.* "A claimant may use circumstantial evidence to demonstrate adaptive functioning deficits that existed prior to age 22, such as attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." *Glenn v. Colvin*, No. 3:12-cv-00886-AA, 2013 WL 3046871, at *3 (D. Or. June 11, 2013) (citation and quotations omitted). Importantly, a plaintiff need only show that "deficits in adaptive functioning exist," not that she has a "complete lack of adaptive functioning." *Walker-Williams v. Berryhill*, 3:16-cv-02133, 2018 WL 921504, at *4 (D. Or. Feb. 15, 2018) (citation and quotations omitted).

The record here contains ample evidence of deficits in adaptive functioning prior to age 22. Plaintiff and her mother testified that she was in special education classes from the first through twelfth grade, tr. 50, 302, and Plaintiff's high school transcript contains the "SE" abbreviation in front of virtually all of her courses, tr. 296. The same records also reflect that Plaintiff received a

"credit" notation, rather than a letter grade, in each class and that she struggled with speaking and verbal comprehension. Tr. 296-97, 301. In addition, Plaintiff exhibited numerous behavioral problems during adolescence, including suicidal ideation, attempted self-harm, and physical altercations with classmates who mocked her speech deficits. Tr. 472. As several circuits and other judges in this District have held, Plaintiff's FISQ score of 65 is also evidence of onset prior to the age of 22 and gives rise to a rebuttable presumption of the same. *See Glenn*, 2013 WL 3046871, at *3 ("While the Ninth Circuit has not addressed whether a valid IQ score is entitled to a presumption that the impairment existed during the claimant's developmental phase, several other circuit and district courts have, including th[is] District.") (citations omitted).

The record also contains ample evidence of extant deficits in adaptive functioning. In addition to Plaintiff's qualifying FSIQ score, her employment history is limited almost entirely to low or modified semi-skilled work, tr. 52-58, 231, 472-73 (childcare worker, telemarketer, school bus driver, fast food worker, deli worker), and she has required substantial assistance to maintain any position requiring independent decision making, tr. 52, 56-58, 472-73, 476, basic math or reading skills, tr. 56-57, 472-73, or deviation from easy-to-follow routines, tr. 52, 54, 473, 476. The consistent theme in Plaintiff's work history is an ability to follow explicit instructions—such as directions from a pre-programmed GPS, items requested on a shopping list, instructions on a cashier screen, or telemarketing scripts—but an inability to reason or make decisions independently. On top of these workplace limitations, Plaintiff's aptitude scores place her between a fourth and fifth grade level on most measures of academic skill, with a particular weakness in reading comprehension. Tr. 68, 467. The record also contains evidence that, although Plaintiff can do some basic cooking, clean dishes, and fold laundry, she requires assistance to use a computer, read email, and conduct household business. Tr. 467.

The ALJ offered several reasons for rejecting this evidence. First, the ALJ discounted Plaintiff's school records because they did not "indicate [her] IQ score or the specific reasons why [she] may have qualified for special education." Tr. 27. It is irrelevant, however, that Plaintiff's school records included no IQ score since, as noted above, Plaintiff submitted a valid FSIQ score of 65 and a person's IQ score is "presumed [to] remain relatively constant during [her] lifetime." *Watkins v. Comm'r of Soc. Sec. Amdin*, No. CV-16-00168-PHX-DLR, 2017 WL 1191093, at *4 (D. Ariz. Mar. 31, 2017) (citations omitted). In addition, the ALJ's finding that the reason for Plaintiff's participation in special education classes was unclear is not supported by substantial evidence. Plaintiff's school records note in multiple places that she struggled with speaking, comprehension, and psychological issues. Tr. 397, 301. The ALJ cited no evidence to suggest that the records were wrong or susceptible to competing interpretations; to the contrary, she later appeared to concede that the records were valid. *See* tr. 33. In any event, there is virtually no evidence to suggest that Plaintiff was a student with normal abilities.[3]

Second, the ALJ opined that "poor academic performance" is insufficient to establish onset prior to age 22 and assigned "little weight" to Plaintiff's IQ score. That reasoning was in error. As already discussed, special education classes are widely accepted as evidence of deficits in adaptive functioning prior to age 22. *See Glenn*, 2013 WL 3046871, at *3. Moreover, Plaintiff

---

[3] Plaintiff stated to Dr. Cogburn that she "believed she was awarded a regular diploma." Tr. 472. The Commissioner takes this statement, which was also cited by the ALJ, as evidence that Plaintiff—despite exclusively completing special education classes and receiving "credit" rather than letter grades—was a mostly normal high school student who received a normal high school diploma and experienced no deficits in adaptive functioning. That argument, however, ignores Dr. Cogburn's warning that Plaintiff "tends to under-estimate [sic] her impairment and need for support," tr. 476, and clearly runs counter to the weight of evidence regarding Plaintiff's education and behavioral problems. There is, moreover, no diploma in the record and, given that Plaintiff's transcript is filled with special education classes, it would be pure speculation to find that she graduated with a "normal" high school degree. It also makes sense that an individual who has limited cognitive abilities, struggles with comprehension, and was teased for her differences during childhood would either be unaware that she was awarded less than a full diploma or reluctant to admit the same. It would be unreasonable to take Plaintiff's statement at face value when the record contains evidence which is clearly inconsistent with those statements.

Page 7 – OPINION AND ORDER

did more than just struggle in school—she required accommodations for her intellectual disability and, as the aptitude tests reflect, never reached a middle school level of academic proficiency. In addition, to the extent the ALJ tried to discount the relevance of Plaintiff's IQ scores, she offered no clear rationale for doing so. As the ALJ recognized earlier in her opinion, the scores are valid and, absent specific reasons for otherwise doubting that Plaintiff had deficits in adaptive functioning, the scores themselves establish an onset prior to age 22.

Finally, the ALJ reasoned that Plaintiff's work and volunteer history were inconsistent with deficits in adaptive functioning. Although the ALJ did not frame it as such, I read this proposition as an attempt to rebut the presumption of adaptive deficits created by Plaintiff's qualifying IQ score and education records. The ALJ described Plaintiff's work as a "bus driver, truck driver, childcare worker, telemarketer, grocery store cashier, and restaurant supervisor," as well as her experience volunteering with a church food pantry, as "mentally challenging." Tr. 28. This characterization is disingenuous at best and, when contextualized, falls well short of the substantial evidence threshold. In each position, Plaintiff was limited to simple and repetitive manual tasks like making sandwiches, following a single bus route, or reading from a brief script. She routinely required assistance with any task involving reading comprehension, arithmetic, or deviation from a set routine or explicit instructions. Plaintiff, for example, relied on her husband to set a GPS and complete all paperwork when she worked as a truck driver; had questions read aloud to her on the examination for her non-commercial driver's license; and required simplified instructions and extended training at trucker school. Tr. 48-49, 51-52, 468, 471-73, 476. She was eventually fired from her position as a telemarketer for reading too slowly, tr. 56, and was quickly dismissed from a parking attendant position which required basic arithmetic, tr. 56-57, 473.

The ALJ placed special emphasis on Plaintiff's work as a "supervisor" at Burgerville and the fact that she "ran [a] church food pantry." Tr. 27-28. There is, however, little evidence that Plaintiff had managerial responsibilities in either of these positions. Plaintiff did indicate on a checkbox form that she supervised ten people at Burgerville, tr. 231, and described herself to one physician as a "lead worker," tr. 238, but her actual description of the position does not reflect any supervisory activities, *see* tr. 472. Instead, Plaintiff "worked the grill, drive through, and cash register," performing adequately only if "she could see on a screen in front of her what she was supposed to do, or how much change she was supposed to give."[4] Tr. 472. Similarly, Plaintiff did not "operate" a food pantry—she "organize[d]" food with the help of an employee, shopped for food items based on a list prepared by an employee and with the assistance of an employee, and would call other volunteers from a list provided by an employee. Tr. 62-64, 471. Plaintiff nevertheless made mistakes "all the time." Tr. 65. When viewed in context, it is clear that Plaintiff has never done more than follow simple instructions and maintain basic routines as part of any paid or volunteer position—titles notwithstanding. *See Glenn*, 2013 WL 3046871, at *3 (holding that plaintiffs are not required to show a "complete lack of adaptive functioning"); *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057 (C.D. Cal. 2010) (holding that plaintiffs need not "demonstrate a disabling, or even severe, level of mental functional impairment").

Ultimately, basic activities of daily living and low-skilled jobs, or even semi-skilled jobs under certain circumstances, are not inconsistent with deficits in adaptive functioning. *See Pedro*

---

[4] I agree with the Commissioner that the record is somewhat ambiguous as to whether Plaintiff was a supervisor at Burgerville. It is clear, however, that the ALJ erred in relying upon Plaintiff's supervisory role when the nature and very existence of that role are not supported by substantial evidence. Given Plaintiff's demonstrated tendency to overestimate her past abilities and the ALJ's persistent cherry-picking of the record, I do not believe that additional proceedings will clarify the issue and it would be unfair to provide the ALJ with another bite at the apple when she previously had an opportunity to question Plaintiff on the matter and failed to do so. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

*v. Astrue*, 849 F. Supp. 2d 1006, 1012-14 (D. Or. 2003) (awarding benefits to a plaintiff who enrolled in special education classes, graduated high school, completed community college coursework, held a driver's license, lived independently, cared for her children, and worked as a teacher's aide, deli clerk, courtesy clerk, laundress, and fast food worker); *Brooks v. Astrue*, No. 3:11–cv–01252–SI, 2012 WL 4739533, at *5-8 (D. Or. Oct. 3, 2012) (awarding benefits to a plaintiff who took special education classes prior to high school, held a driver's license, worked as a dump truck driver for eight years, and was found at step two to have a severe impairment of borderline intellectual functioning); *Conley v. Colvin*, 274 F. Supp. 3d 1119, 1122-25 (D. Or. 2017) (awarding benefits to a plaintiff who previously maintained full-time work in low-skilled positions, performed household chores, cared for her autistic daughter as a single parent, took special education classes, and struggled to understand school subjects). The ALJ therefore erred in finding that Plaintiff failed to satisfy the requirements of Listing 12.05(C).

    II.  <u>Remand for Award of Benefits</u>.

When a district court finds reversable error by an ALJ, it has the discretion to either remand the case for further proceedings or immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1083 (2000). The proper disposition turns on the utility of additional proceedings. *Id.* at 1179. A remand for award of benefits is appropriate where further proceedings would serve no useful purpose or where the record is fully developed. *Id.* Here, I find that Plaintiff meets the requirements of Listing 12.05(C) and that further proceedings would serve no useful purpose. Accordingly, remand for immediate payment of benefits is appropriate. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

# CONCLUSION

Based on the foregoing, Judge Coffin's F&R is ADOPTED in part. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision is REVERSED and the case REMANDED for immediate award of benefits.

IT IS SO ORDERED.

DATED this 21st day of May, 2019.

/s/ Michael McShane
Michael McShane
United State District Judge